Salvatore BROGNO

v.

**W & J ASSOCIATES, LTD.**

No. 96–83–M.P.

Supreme Court of Rhode Island.

July 17, 1997

John Coughlin, Providence, for Plaintiff.

Dennis R. Gannon, Francis T. Connor, Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

This case came before us on a petition for certiorari filed pursuant to G.L.1956 § 28–35–29. Salvatore Brogno (Brogno) seeks review of a final decree of the Appellate Division of the Workers' Compensation Court that affirmed a trial judge's finding that Brogno was not a statutory employee of W & J Associates, Ltd. (W & J) at the time of his injury and was not entitled to workers' compensation benefits.

Omni Development Corporation (Omni) owned real estate in Providence, Rhode Island. Omni hired W & J as a general contractor for a construction project on that real estate. As part of that project, W & J subcontracted with Rocco D'Angelo (D'Angelo) for the placement of siding on two buildings. D'Angelo, in turn, subcontracted with T & M Home Improvement (T & M) for the actual installation of the siding. Richard Williams (Williams), the president of W & J, was at the job site every day and was aware that D'Angelo had subcontracted out the siding work to T & M.

No discussion of workers' compensation insurance ever occurred among W & J, D'Angelo, and T & M, and as it was later discovered, only W & J had workers' compensation insurance. Brogno, an employee of T & M, suffered physical injuries during the course of his employment for T & M on the Omni construction project. Soon thereafter, he filed an employee petition with the Workers' Compensation Court, alleging that he was a statutory employee of W & J, pursuant to G.L.1956 § 28–29–6.1, and was entitled, therefore, to injured-employee benefits under W & J's workers' compensation insurance policy.

Section 28–29–6.1, as enacted by P.L.1994, ch. 385, § 1 provided, at the time of Brogno's injury, as follows:

"(a) Whenever a general contractor or a construction manager shall enter into a contract with a subcontractor for work to be performed in Rhode Island, the general contractor or construction manager shall at all times require written documentation evidencing that the subcontractor carries workers' compensation insurance with no indebtedness for its employees for the term of the contact [*sic*]. In the event that the general contractor or construction manager fails to obtain said written documentation from the subcontractor, the general contractor or construction manager shall be deemed to be the employer pursuant to provisions of section 28–29–2.

"(b) For the purposes of this section, 'construction manager' means an individual corporation, partnership or joint venture, or other legal entity responsible for supervising and controlling all aspects of construction work to be performed on the construction project, as designated in the project documents, in addition to the possibility of performing some of the construction services itself. For the purposes of this section, the construction manager need have no contractual involvement with any of the parties to the construction project other than the owner, or may contract directly with the trade contractors pursuant to its agreement with the owner."

The Workers' Compensation Court trial judge interpreted § 28–29–6.1 as providing that only general contractors and construction managers are responsible to employees of first-level subcontractors if they fail to procure proof of workers' compensation insurance from those first-level contractors. He declined, however, to extend the protections of § 28–29–6.1 to employees of uninsured sub-subcontractors, reasoning that because the statute used the term "subcontractor" in the singular and because the statute was silent in regard to sub-subcontractors, the legislative intent was not to include sub-subcontractors within the purview of the statute. The trial judge also determined that D'Angelo's role and status

was that of the construction manager on the project site. He concluded that the statute placed the responsibility for determining if the project subcontractors were insured for workers' compensation coverage on D'Angelo as the statutory employer because of D'Angelo's failure to obtain written documentation confirming the existence of workers' compensation insurance from T & M. The trial judge additionally found Brogno was an employee of the first-level subcontractor that D'Angelo had hired. However, because there was no evidence in the record showing that D'Angelo had workers' compensation coverage insurance, that conclusion left Brogno without a remedy under the Workers' Compensation statutes.[1] The Appellate Division affirmed that opinion in a two-to-one decision with one judge dissenting.

The dissent asserted that § 28–29–6.1 was intended to protect employees and that, contrary to the recognized benevolent intent of the statute, the result and effect of the majority opinion failed to protect the employees and instead served to protect general contractors and their construction managers. In keeping with its expressed legislative intent to protect injured workers, the dissenting judge opined, the General Assembly purposely placed the burden on the general contractor or its construction manager to ensure that its subcontractors carried workers' compensation insurance and, failing to do so, would be held responsible as the statutory employer of any uninsured subcontractor's employee injured while working on the project site. That interpretation, the dissent reasoned, was consistent with the mandate to construe the provisions of the Workers' Compensation Act liberally in order to effect "its expressed and benevolent purposes." We find that reasoning to be persuasive.

■ It is conceded by all the parties that W & J did not require written proof of workers' compensation insurance from either D'Angelo or T & M. Thus, the language of

§ 28–29–6.1 unquestionably controls here. The question that emerges from that concession is whether the language of the statute, which refers to "subcontractor" in the singular, permits inclusion of sub-subcontractors. Clearly it does. In G.L.1956 § 43–3–4 of our General Laws, the General Assembly provided that the use of the plural and the use of the singular in our statutes are indistinguishable: "Every word importing the singular number only, may be construed to extend to and to include the plural number also; and every word importing the plural number only, may be construed to extend to and to embrace the singular number also." Thus, even though § 28–29–6.1 uses the term "subcontractor," we can, in a manner consistent with § 43–3–4, construe that term to mean "subcontractors." In the plural that term can clearly and unambiguously be interpreted as including all subcontractors hired by general contractors and construction managers to perform work on the project. Pursuant to that interpretation, when general contractors and construction managers fail to get written documentary proof of workers' compensation insurance when hiring subcontractors, they then become responsible as statutory employers to employees of a subcontractor hired by the general contractor or the construction manager as well as to employees of a sub-subcontractor hired by a subcontractor.[2]

■ Additionally, in the case of construction managers as defined in subsection (b) of § 28–29–6.1, there need not be any "contractual involvement with any of the parties to the construction project other than the owner" before responsibility as a statutory employer attaches. In this case the trial judge found that D'Angelo was the construction manager on the construction project because D'Angelo considered himself the "construction broker" and because he "appeared several times a day at the site." However, contrary to the trial judge's finding, D'Angelo was neither a general contractor nor a

1. The trial judge declined to address whether D'Angelo should be held personally liable pursuant to G.L.1956 §§ 28–36–10 and 28–36–15 because that issue was not directly before him.

2. We note that we stop the analysis at sub-subcontractors merely for the purpose of simplicity reasons. Presumably the line of responsibility goes on indefinitely, depending on how many times the job is subcontracted out.

construction manager because all he did was subcontract out his individual siding job. He was not "responsible for supervising and controlling all aspects of construction work to be performed on the construction project" site as required by the plain language of § 28–29–6.1(b). Instead, he was only responsible for his one particular portion of the work to be performed in the overall project. W & J, however, was in charge of engaging the necessary trade contractors in order to carry out the actual work required to complete the project and was also responsible for supervising and controlling all aspects of the project, as evidenced by the daily presence of Williams, the president of W & J, at the job site. Although W & J was hired as a general contractor for the job, it appears that notwithstanding that nomenclature, W & J's role on this particular project could arguably be that of a construction manager. In *Bethlehem Rebar Industries, Inc. v. Fidelity and Deposit Co.*, 582 A.2d 442 (R.I.1990), we explained that the difference between a construction manager and a general contractor was

"that the CM [construction manager] acts as a mere agent for a project's owner and that he engages 'trade contractors' in his principal's name to perform most or all of the actual work. *See generally* 1 Stein, *Construction Law* ¶ 5.03.[1][b] and [c], [2], [3] at 5–79 to 5–85 (M.B.1989). This is in distinction to a general contractor who is in the chain of liability and who hires 'subcontractors' in his own name to perform work. *Id.* at 5–81. There are many variations on the CM role, and often it is difficult to distinguish between a CM and a general manager. *Id.* Therefore, the mere self-serving label of CM or general contractor will not in and of itself determine a party's legal status." *Id.* at 443 n. 1.

Thus, even though W & J might be labeled the "general contractor," that label is not conclusive. We conclude, instead, that even though W & J might have hired subcontrac-

tors in its own name as opposed to the name of the principal, Omni, its role was actually closer to that of a construction manager as that term is defined in § 28–29–6.1(b) because, as we noted earlier, W & J was in charge of supervising and controlling all aspects of the project construction work and also of engaging the necessary trade contractors needed to perform the work on the project commenced by Omni, the owner of the property.[3] Thus, since W & J was the construction manager on the project where Brogno was injured, the fact that there was no direct contractual involvement between W & J and T & M, Brogno's immediate employer, is no bar to Brogno's entitlement to workers' compensation benefits. Accordingly, since W & J failed to obtain written proof of workers' compensation insurance coverage from D'Angelo, it is responsible for Brogno's injuries as a statutory employer.

To hold otherwise would be to permit general contractors and construction managers to be relieved of responsibility merely by ensuring that the project is sub-subcontracted out. Consistent with the benevolent purposes of the statute, our holding ensures that both general contractors and construction managers require written proof of workers' compensation insurance which in turn will ensure that subcontractors require the same from the sub-subcontractors, and so on down the line. In that manner, injured employees will be fully protected by the Workers' Compensation Act.

Accordingly, our interpretation of § 28–29–6.1 is completely consistent with the mandate to construe the Workers' Compensation Act liberally in order to effectuate its benevolent purpose. *See Fontaine v. Caldarone*, 122 R.I. 768, 771, 412 A.2d 243, 245 (1980)("we are * * * aware that the provisions of the Workers' Compensation Act are to be liberally construed to effectuate the benevolent purpose that led to its enactment"). Our holding is consistent with the interpretations given similar statutes in the

---

**3.** Although in *Bethlehem Rebar Industries, Inc. v. Fidelity and Deposit Co.*, 582 A.2d 442 (R.I.1990), we mentioned that it was a relevant factor whether the subcontractors were hired in the name of the owner of the project or in the name

of the construction manager/general contractor, G.L.1956 § 28–29–6.1 does not make mention of that fact, so it is not relevant to our discussion here.

vast majority of other states addressing this issue.

In 4 *Larson's Workers' Compensation Law*, ch. 9, § 49.14 (1997), forty-three states are listed as having "contractor-under" statutes similar to, although not worded exactly the same as, § 28–29–6.1.[4] Larson states that one of the purposes of such statutes is to "prevent evasion of compensation coverage by the subcontracting of the employer's normal work." 4 *Larson*, ch. 9, § 49 at 9–1. Although Larson acknowledges that each state uses different language in order to achieve the intended result, the general consensus was to provide employees with liberal coverage and to place the burden of ensuring such coverage upon those persons in the best position to do so, namely, the general contractor and the construction manager.

The petitioner, at hearing, called our attention to several sister-state cases in which somewhat similar statutes were construed to make the general contractor the statutory employer for the employees of a sub-subcontractor where the general contractor had failed to require proof of insurance from the subcontractor. The respondent in reply correctly pointed out, however, that the statutes concerned in all those cases employed language that was very different from that of our Rhode Island statute. *See Fidelity Construction Co. v. Arthur J. Collins & Son*, 130 So.2d 612 (Fla.1961); *In re Van Bibber's Case*, 343 Mass. 443, 179 N.E.2d 253 (1962); *Minnaugh v. Topper & Griggs, Inc.*, 69 A.D.2d 965, 416 N.Y.S.2d 348 (N.Y.App.Div. 1979); *Tayloe Paper Co. v. W.F. Jameson Construction Co.*, 211 Tenn. 232, 364 S.W.2d 882 (1963). However, notwithstanding the different and distinguishing language employed in those case-jurisdiction statutes, the common denominator discernible throughout each is a clearly expressed legislative intention to provide relief to an injured employee when the general contractor who was in the best position to ensure such workers' compensation coverage failed to do so. Thus, to construe our Workers' Compensation Act as narrowly as did the trial judge and the Appellate Division would be contrary not only to

our legislature's expressed policy with respect to workers' compensation law but also to the same expressed policy contained in similar statutes in the vast majority of other states.

Accordingly, because W & J failed to obtain written documentation from D'Angelo assuring that it had workers' compensation insurance, W & J became and is the statutory employer for the purposes of Brogno's employee petition filed in the Workers' Compensation Court.

Accordingly, for all the above reasons, the petition for certiorari is granted, the final decree of the Appellate Division is quashed, and the papers in this case are remanded to the Workers' Compensation Court for further proceedings in accordance with this opinion.

GOLDBERG, J., did not participate.

---

4. Larson incorrectly lists Rhode Island as one of the seven states that does not have such a statute.

4 *Larson's Workers' Compensation Law*, ch. 9, § 49.11 at 9–1 n. 1.