JOHN ROBERTSON, Employee, Plaintiff v. HAGOOD HOMES, INC., Employer, VILLANOVA INSURANCE COMPANY, Carrier, and/or ERIC SCHUETTE, d/b/a PRECISION HOME BUILDERS, non-insured, Employer, and/or JIM McGUIRT, Employer, Defendants

No. COA02-1222

(Filed 2 September 2003)

**1. Workers' Compensation— failure to obtain certificate of insurance—general contractor a statutory employer of subcontractor**

The Industrial Commission did not err in a workers' compensation case by holding in effect that defendant general contractor may become the statutory employee of defendant subcontractor and therefore liable for payment of workers' compensation benefits to plaintiff injured employee of a sub-subcontractor under N.C.G.S. § 97-19, because: (1) the general contractor failed to comply with N.C.G.S. § 97-19, which requires obtaining a certificate of insurance from its subcontractor; (2) relieving defendants of liability would relegate plaintiff for compensation protection to small subcontractors who fail to carry workers' compensation insurance; (3) any other result would defy the explicit purpose of N.C.G.S. § 97-19 by permitting general contractors to circumvent the law and to insulate themselves from liability simply by interposing an additional layer of subcontractors; and (4) the chain of liability extends from the immediate employer of the injured employee up the chain to the first responsible contractor who has the ability to pay.

**2. Workers' Compensation— notice of insurance cancellation—subletting work through series of contracts**

Although defendants contend the Industrial Commission erred in a workers' compensation case by finding that it was more likely than not that defendant general contractor had received notice that defendant subcontractor's workers' compensation insurance was cancelled, the issue of notification is irrelevant on the facts of this case because: (1) defendant failed to comply with N.C.G.S. § 97-19 by failing to obtain a certificate of insurance when it sublet the contract; (2) defendants' act of requiring a certificate for the first contract that they sublet to defendant subcontractor was insufficient to demonstrate compliance with N.C.G.S. § 97-19 with regard to the later contract; and (3) having chosen voluntarily to sublet a series of individual contracts, defendants were required by N.C.G.S. § 97-19 to obtain a certificate for each separate contract.

Judge TYSON concurring in a separate opinion.

Appeal by defendants from opinion and award entered 4 June 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 June 2003.

*Jones Martin Parris & Tessener Law Offices PLLC, by Tamara R. Nance, for plaintiff-appellee.*

*Marshall, Williams & Gorham, L.L.P., by Ronald H. Woodruff and F. Murphy Averitt, III, for defendants-appellants.*

*Eric Schuette, pro se.*

*James L. McGuirt, pro se.*

LEVINSON, Judge.

Defendants (Hagood Homes Inc. and Villanova Insurance Company) appeal an opinion of the Industrial Commission awarding plaintiff (John Robertson) medical benefits, temporary total disability, and partial disability compensation. For the reasons that follow, we affirm.

The relevant facts as found by the Industrial Commission are summarized as follows: Jim Kenny, president of defendant Hagood, and Eric Schuette, d/b/a Precision Home Builders, began working

ROBERTSON v. HAGOOD HOMES, INC.

[160 N.C. App. 137 (2003)]

together in March 1999. The terms of the first contract they negotiated provided that Hagood, general contractor for a house construction job, would subcontract the framing of the house to Schuette. The property was located at "Lot 15" in the Magnolia Green Subdivision, and when Hagood sublet the Lot 15 framing contract to Schuette, Kenny required Schuette to provide a certificate of workers' compensation insurance. Accordingly, Schuette had his insurance agency fax Hagood a copy of a certificate of insurance stating that Schuette was insured under a policy in effect from 16 March 1999 until 16 March 2000. Following completion of the framing for Lot 15, Hagood and Schuette entered into several additional contracts concerning different properties. In each of these, Hagood was the general contractor for a building construction project, and Schuette subcontracted part of the contract. Hagood did not request or obtain a certificate of workers' compensation insurance when it sublet any of these additional contracts.

The instant case arises from one of the contracts between Hagood and Schuette for which Hagood failed to obtain a certificate of workers' compensation. In fall 1999, Hagood, general contractor for a home construction project, subcontracted the framing to Schuette. In October 1999, Schuette subcontracted the framing to Jim McGuirt. Plaintiff was employed by McGuirt as a framer helper. When Schuette sublet the framing contract to McGuirt, Schuette agreed to provide workers' compensation insurance, and withheld $1,000 from the contract fee for this purpose. However, at the time Schuette negotiated this deal with McGuirt, Schuette knew his workers' compensation insurance had already been canceled for nonpayment of premiums.

On 26 October 1999, while working as a framing helper for McGuirt, plaintiff fell from a ladder and sustained injuries. At the time of this accident, neither McGuirt nor Schuette had workers' compensation insurance. On 1 December 1999, plaintiff filed a claim seeking workers' compensation and medical benefits from defendants. Hagood denied liability, and a hearing was held before a deputy commissioner of the Industrial Commission. The deputy commissioner issued an opinion and award on 31 May 2001, determining that defendants were liable for payment of plaintiff's workers' compensation and medical expenses. Defendants appealed to the Full Commission, which issued its opinion and award on 4 June 2002. The Industrial Commission generally affirmed the deputy commissioner's opinion and awarded plaintiff temporary total disability,

medical benefits, and partial disability compensation. From this order, defendants appeal.

" 'Appellate review of opinions and awards of the Industrial Commission is strictly limited to the discovery and correction of *legal* errors.' " *McAninch v. Buncombe County Schools*, 347 N.C. 126, 131, 489 S.E.2d 375, 378 (1997) (quoting *Godley v. County of Pitt*, 306 N.C. 357, 359-60, 293 S.E.2d 167, 169 (1982)). Thus:

> [j]urisdiction of appellate courts on appeal from an award of the Industrial Commission is limited to the questions (1) whether there was competent evidence before the Commission to support its findings and (2) whether such findings support its legal conclusions. . . . [F]indings of fact made by the Commission are conclusive on appeal when supported by competent evidence . . . even though there is evidence to support a contrary finding of fact.

*McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982) (citation omitted). In the present case, the only findings of fact to which defendants assigned error were findings number nine and sixteen, stating that Hagood had likely received notice of the cancellation of Schuette's workers' compensation insurance. Because "defendants failed to assign error to any of the Commission's [other] findings of fact . . . these findings are conclusively established on appeal." *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (2003) (citation omitted). The Commission's conclusions of law, however, are reviewed *de novo. See Shingleton v. Kobacker Grp.*, 148 N.C. App. 667, 670, 559 S.E.2d 277, 280 (2002) (question of law "is subject to *de novo* review") (citation omitted).

[1] The primary issue raised by this appeal is whether, pursuant to N.C.G.S. § 97-19 (2001), a general contractor may become the statutory employer of a subsubcontractor and therefore liable for payment of workers' compensation benefits to the injured employee of a subsubcontractor. Resolution of this issue requires analysis of G.S. § 97-19, which states in relevant part that:

> Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract . . . without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, . . . stating that such subcontractor has complied with G.S. 97-93 hereof, shall be liable, . . . to the same extent as such

ROBERTSON v. HAGOOD HOMES, INC.

[160 N.C. App. 137 (2003)]

subcontractor would be . . . for the payment of compensation and other benefits under this Article. . . . If the principal contractor . . . shall obtain such certificate at the time of subletting such contract . . . he [is not] liable . . . for compensation. . . .

Defendants argue that the Industrial Commission erred by concluding that under G.S. § 97-19 they are liable to plaintiff for workers' compensation benefits. We disagree.

In its opinion and award, the Industrial Commission made the following pertinent conclusions of law:

1. Plaintiff sustained a compensable injury by accident . . . arising out of and in the course of his employment with defendant Jim McGirt on October 26, 1999. N.C.G.S. § 97-2(6).

2. Jim McGirt employed plaintiff . . . and was uninsured. . . . Jim McGirt paid Eirk [sic] Schuette for workers' compensation insurance. N.C.G.S. § 97-2; [§] 97-19.

3. Eric Schuette . . . the next sub-contractor in the chain of sub-contractors, was responsible for plaintiff's workers' compensation insurance. N.C.G.S. § 97-19.

4. Because Eric Schuette . . . was non-insured . . . liability is assumed by Hagood Homes, Inc., the general contractor in the line of sub-contractors. . . . The chain of liability extends from the immediate employer of the injured employee up the chain to the first responsible contractor who has the ability to pay. . . .

10. Because Eric Schuette . . . had no valid workers' compensation insurance, Hagood Homes shall be liable for all compensation and medical treatment. N.C.G.S. § 97-19; [§] 97-29; [§] 97-25.

Defendants argue that in order for G.S. § 97-19 to apply "a general contractor must contract directly with a subcontractor or a subcontractor must contract with a lower tier subcontractor." Defendants note that G.S. § 97-19 does not explicitly "address the issue of what should happen in a case where, as here, the subcontractor contracts with a sub-subcontractor to perform work." Defendants contend liability may not be imposed upon a general contractor who did not contract directly with the subsubcontractor, because the general contractor and subsubcontractor are not "in privity." On this basis, defendants assert that they are relieved of liability. We disagree,

ROBERTSON v. HAGOOD HOMES, INC.

[160 N.C. App. 137 (2003)]

and conclude that if the general contractor fails to comply with G.S. § 97-19 by obtaining a certificate of insurance from its subcontractor, then G.S. § 97-19 may be applied to an injured employee of a subsubcontractor of the general contractor.

In *Deese v. Lawn & Tree Expert Co.*, 306 N.C. 275, 277-78, 293 S.E.2d 140, 142-43 (1982), the North Carolina Supreme Court noted that the Court "has interpreted the statutory provisions of North Carolina's workers' compensation law on many occasions[, and has] . . . been wisely guided by several sound rules of statutory construction[.]" Four of the principles articulated in *Deese* may be summarized as follows: (1) the workers' compensation statutes should be liberally construed whenever possible to avoid denying benefits based on "narrow interpretations of its provisions"; (2) appellate courts may not expand upon "the ordinary meaning of the terms used by the legislature"; (3) appellate courts should avoid adding a provision to a statute "that has been omitted, which [it] believes ought to have been embraced"; and (4) the legislative intent may be determined by consideration of the "language, purposes and spirit" of the workers' compensation act. *Id.* (citations omitted). In addition, the *Deese* Court stated another principle of significance in the present case:

> [F]inally, the Industrial Commission's legal interpretation of a particular provision is persuasive, although not binding, and should be accorded some weight on appeal and not idly cast aside, since that administrative body hears and decides all questions arising under the Act in the first instance.

*Id.* We shall endeavor to adhere to these principles in our interpretation of G.S. § 97-19.

We first note that the language of the statute does not prohibit its application to employees of a subsubcontractor. Rather, the statute refers somewhat expansively to "any principal contractor, intermediate contractor, or subcontractor." We also agree with the Industrial Commission that, if the legislature had intended G.S. § 97-19 to apply only to those who with whom the general contractor has contracted directly, "there would be no need of the following provision[] of N.C.G.S. § 97-19":

> Every claim . . . shall be instituted against all parties liable for payment, and said Commission, in its award, shall fix the order in which said parties shall be exhausted, beginning with the immediate employer.

Moreover, our review of the statute and its interpretive case law compels the conclusion that it was enacted to address situations precisely like the one presented herein:

> The manifest purpose of this statute, . . . is to protect employees . . . by imposing ultimate liability on principal contractors, intermediate contractors, or subcontractors[.] . . . It is also the obvious aim of the statute to forestall evasion of the [Workers'] Compensation Act by those who might be tempted to subdivide their regular operations with the workers, thus relegating them for compensation protection to small subcontractors, who fail to carry, or if small enough may not even be required to carry, compensation insurance.

*Greene v. Spivey*, 236 N.C. 435, 443, 73 S.E.2d 488, 494 (1952) (citation omitted). In the present case, to relieve defendants of liability would, as described in *Greene*, "relegate [plaintiff] for compensation protection to small subcontractors who fail to carry" workers' compensation insurance. The statute's purpose was also addressed in *Cook v. Norvell-Mackorell Real Estate Co.*, 99 N.C. App. 307, 310, 392 S.E.2d 758, 759-60 (1990), in which this Court noted that G.S. § 97-19 is "the so-called 'statutory employer' or 'contractor under' statute" and that the statute:

> was enacted by the Legislature to deliberately bring specific categories of conceded nonemployees within the coverage of the Act . . . and to *prevent principal contractors*, intermediate contractors, and sub-contractors *from relieving themselves of liability* under the Act *by doing through sub-contractors what they would otherwise do through the agency of direct employees.'*

(citing Larson, The Law of Workmen's Compensation, vol. 1C § 49.00 *et seq.*) (emphasis added) (citations omitted). We conclude that in the present case, the legislative intent and purpose of G.S. § 97-19 would be served by imposing liability upon defendants. We further conclude that any other result would defy the explicit purpose of G.S. § 97-19, by permitting general contractors to circumvent the law and to insulate themselves from liability simply by interposing an additional "layer" of subcontractors.

Additionally, we observe that when appellate courts in other jurisdictions have interpreted similar statutes, they generally have concluded that the statute may be applied to employees of a subsubcontractor, even if the general contractor did not enter into a contract

with the claimant's employer. In *Brogno v. W & J Associates, Ltd.*, 698 A.2d 191, 195 (R.I. 1997), the Rhode Island Supreme Court summarized rulings from several "sister-states" in which workers' compensation statutes were "construed to make the general contractor the statutory employer for the employees of a sub-subcontractor where the general contractor had failed to require proof of insurance from the subcontractor." This is exactly the situation presented in the case *sub judice*. The *Brogno* Court also observed that:

> the common denominator discernible [among the states adopting this interpretation] . . . is a clearly expressed legislative intention to provide relief to an injured employee when the general contractor . . . failed to obtain written documentation from [subcontractor] assuring that it had workers' compensation insurance[.]

*Id.* Similar conclusions have been reached in Mississippi and Pennsylvania. *See Crowe v. Brasfield & Gorrie Contractor*, 688 So. 2d 752, 757 (Miss. 1996) (where subsubcontractor does not have workers' compensation insurance, "the injured employee could ascend the hierarchy to get workers' compensation coverage from the subcontractor immediately above his employer or further up until he received coverage"); *see McCarthy v. Dan Lepore & Sons Co., Inc.*, 724 A.2d 938, 941 (Pa. Super. Ct. 1998), *appeal denied*, 560 Pa. 707, 743 A.2d 921 (1999):

> [T]he key element of statutory employer status is the vertical relationship between the general contractor, the subcontractor, and the sub-subcontractor, whose employee was injured. . . . [B]y virtue of the vertical relationship, *all of the contractors up the ladder remain potentially liable under the Act for payment of the injured employee's workers' compensation benefits.* . . .

(emphasis added) (citation omitted). A Utah case held that:

> 'In the increasingly common situation displaying a hierarchy of principal contractors upon subcontractors upon sub-subcontractors, *if an employee of the lowest subcontractor on the totem pole is injured,* there is no practical reason for *reaching up the hierarchy* any further than the *first insured contractor.*'

*Jacobsen v. Industrial Comm'n of Utah*, 738 P.2d 658, 661 (Utah Ct. App. 1987) (quoting 1C A. Larson, Workmen's Compensation Law, § 49.14 (1986)) (emphasis added). The same conclusion was reached in New York:

**ROBERTSON v. HAGOOD HOMES, INC.**

[160 N.C. App. 137 (2003)]

> [O]ur concern is *whether [the workers' compensation statute] was intended* to *extend liability to a subcontractor that is twice removed from the uninsured employer.* We are of the opinion *that it was so intended.* The purpose of the statute, in our view, is to protect an injured employee and place liability on the insured contractor or subcontractor *nearest to the uninsured employer in the chain* of subcontractors. A contrary conclusion would frustrate the true intent of the statute[.]

*Minnaugh v. Topper & Griggs, Inc.,* 69 A.D.2d 965, 966, 416 N.Y.S.2d 348, 349 (N.Y. App. Div. 3d Dep't. 1979) (emphasis added). Finally, from Tennessee:

> The injured employee was an employee of a sub-contractor under the sub-contractor . . . . In other words, as between the parties in this case it is a stepping stone. . . . [T]he primary responsibility is on first the employer of the injured employee, then if that employer can't pay him, he must take it a step up. There is no connection between this injured employee and the sub-contractor and the general contractor. They are only connected by reason of the statute.

*Tayloe Paper Co. v. Jameson,* 211 Tenn. 232, 239, 364 S.W.2d 882, 885-86 (1963).

Thus, appellate courts in other jurisdictions have concluded that "more than one employer in a *contractor subcontractor employer pyramid* may qualify as an injured worker's statutory employer[.]" *Selle v. Boeing Co.,* 17 Kan. App. 2d 543, 543, 840 P.2d 542, 542 (1992). These decisions employ a variety of metaphors to describe relationships among general contractor, subcontractors, and subsubcontractors. However, regardless of whether the parties are characterized as a chain, a ladder, a totem pole, a pyramid, stepping stones, or simply a hierarchy, the stated conclusion is the same as that reached by the Industrial Commission in the instant case: that the "chain of liability extends from the immediate employer of the injured employee up the chain to the first responsible contractor who has the ability to pay." Further, we agree with the Rhode Island Supreme Court:

> To hold otherwise would be to permit general contractors and construction managers to be relieved of responsibility merely by ensuring that the project is sub-subcontracted out. . . . [O]ur holding ensures that both general contractors and [subcontractors] require written proof of workers' compensation insurance which

in turn will ensure that subcontractors require the same from the sub-subcontractors, and so on down the line.

*Brogno v. W & J Associates, Ltd.*, 698 A.2d 191, 194 (R.I. 1997). While clearly not precedent for this Court, these holdings from other jurisdictions are persuasive.

Defendants also argue that imposing workers' compensation liability upon them is improper because, even if they are deemed to be plaintiff's statutory employer, they would still be subject to a tort suit by plaintiff. Defendants misstate the law in this regard. *See, e.g., Rich v. R.L. Casey, Inc.*, 118 N.C. App. 156, 158-59, 454 S.E.2d 666, 667 (where "defendant, as a principal contractor, is plaintiff's statutory employer" defendant is "entitled to benefit" from exclusivity provisions of workers' compensation law, and "workers' compensation benefits available to plaintiff through defendant's workers' compensation carrier constitute[] plaintiff's exclusive remedy"), *disc. review denied*, 340 N.C. 360, 458 S.E.2d 190 (1995).

We conclude that the Industrial Commission did not err by concluding that on the facts of this case G.S. § 97-19 may be applied to defendants to impose liability for plaintiff's workers' compensation benefits and compensation.

---

[2] Defendants also argue that the Industrial Commission erred by finding that it was "more likely than not" that Hagood had received notice that Schuette's workers' compensation insurance was cancelled. Because we conclude that the issue of notification is irrelevant on the facts of this case, we are not required to resolve this question.

G.S. § 97-19, which addresses certain obligations and responsibilities attendant upon the parties' execution of contracts, is written in terms of individual contracts and subcontracts ("Any principal contractor, intermediate contractor, or subcontractor *who shall sublet any contract* for the performance of any work") (emphasis added). In this vein, the statute provides that a general contractor who obtains a certificate of compliance with workers' compensation "at the time of subletting such contract" is relieved of liability as regards employees injured in the performance of the contract. In that situation, the issue of notification to the general contractor regarding termination of the subcontractor's workers' compensation insurance may be relevant:

[The general contractor] complied with N.C.G.S. § 97-19 by obtaining a certificate of insurance, *at the time of subletting its contract to [subcontractor]*, . . . and thereafter in good faith relied on its purported validity in the absence of notice of cancellation prior to the expiration of the policy period. . . . [The general contractor] did not have knowledge of the cancellation prior to plaintiff's injury. Accordingly, we conclude that the Commission's findings support the conclusion that [general contractor] was not a statutory employe[r].

*Patterson v. Markham & Associates*, 123 N.C. App. 448, 453-54, 474 S.E.2d 400, 403, *disc. review denied*, 344 N.C. 474, 478 S.E.2d 5 (1996). Based upon *Patterson* and G.S. § 97-19, it appears that a general contractor who obtains a certificate of workers' compensation insurance is entitled to rely upon its validity until the earlier of (1) the completion of the contract, or (2) notification that the insurance was cancelled. However, in the case *sub judice*, it is undisputed that defendant Hagood failed to comply with G.S. § 97-19 when it subcontracted framing to Schuette for the job on which plaintiff was injured. As Hagood failed to obtain a certificate of insurance when it sublet the contract, notification of the cancellation of Schuette's workers' compensation insurance is irrelevant.

Nor was the defendant's act of requiring a certificate for the first contract that they sublet to Schuette sufficient to demonstrate compliance with G.S. § 97-19 as regards the later contract. In *Southerland v. B.V. Hedrick Gravel & Sand Co.*, 345 N.C. 739, 483 S.E.2d 150 (1997), the North Carolina Supreme Court upheld the Industrial Commission's conclusion that to comply with G.S. § 97-19 a general contractor must actually *obtain* a certificate:

Defendants' argument that by contracting with plaintiff to the effect that plaintiff *shall* furnish a certificate of insurance, defendants "required" from plaintiff a certificate of insurance and therefore satisfied N.C.G.S. § 97-19, . . . [although] defendants [n]ever actually received a certificate . . . is without merit. The . . . word 'require' in this instance means in fact actually obtain a certificate.

*Id.* at 741, 483 S.E.2d at 151. In the instant case, it is uncontroverted that defendants neither requested nor obtained a certificate for the contract at issue.

Finally, we observe that defendant Hagood was free to execute a contract with Schuette that sublet several jobs in a single contract.

Or, if defendants wished to secure Schuette's assistance with framing on an "as needed" basis, they might have hired Schuette as an employee. Indeed, after finishing the job at issue herein, Schuette went to work for Hagood as an employee. However, in the present case, defendants chose to structure their business relationship by executing a series of individual contracts for separate construction projects. Having chosen voluntarily to sublet a series of individual contracts, defendants were required by G.S. § 97-19 to obtain a certificate for each separate contract.

For the reasons discussed above, we conclude that the Industrial Commission's findings of fact were supported by competent evidence, and that they support its conclusions of law. We further conclude that the Industrial Commission did not err by concluding that defendants are liable for plaintiff's workers' compensation benefits. Accordingly, the opinion and award of the Industrial Commission is

Affirmed.

Judge MARTIN concurs.

Judge TYSON concurs in the result with separate opinion.

TYSON, Judge concurring.

I concur with the result of the majority's opinion which affirms the opinion and award of the North Carolina Industrial Commission ("Commission"). I agree with the majority's determination that N.C. Gen. Stat. § 97-19 provides liability to the general contractor when an employee of the subcontractor is injured under these facts. The majority's discussion and focus on out of state statutes and case law is not germane to the resolution of this case. The language of North Carolina's statute and case law is sufficient to impose liability on the general contractor unless there is a defense.

N.C. Gen. Stat. § 97-19 provides a defense to the general contractor's liability. "If the principal contractor, intermediate contractor or subcontractor shall obtain such certificate [verifying workers' compensation insurance] *at the time of subletting such contract to subcontractor*, he shall not thereafter be held liable to any employee of such subcontractor for compensation or other benefits under this Article." N.C. Gen. Stat. § 97-19 (2003). Under the statute, a contrac-

**ROBERTSON v. HAGOOD HOMES, INC.**

[160 N.C. App. 137 (2003)]

tor is entitled to a defense from liability if, "at the time of subletting" the contract covering the job in which the employee was injured, the contractor had obtained a certificate of insurance. If there is one contract with multiple houses, only one certificate covering the period of work need be obtained. However, if there are separate and distinct contracts, the statute requires a new certificate be issued at the time of subletting each contract.

James Kenny, president of Hagood Homes, testified that when he received the certificate of insurance for Precision Homes he had only "one verbal contract with [Precision Homes] at that time for one house." The certificate of insurance specifically stated that it was provided for Lot 15 Magnolia Greens. Kenny acknowledged that he did not request subsequent certificates of insurance for the later jobs. Eric Schuette, owner of Precision Homes, testified that each house was a separate verbal contract between Precision Homes and Hagood Homes.

The Commission found:

6. Schuette and Hagood Home began working together in March of 1999. At that time, Schuette and Jim Kenny, president of Hagood Homes, entered into a verbal contract for Schuette to frame a house on Lot 15 in the Magnolia Green subdivision. That was the only house contracted for at that time. . . . The certificate [of insurance], provided in discovery, had a notation at the bottom that it was for Lot 15 Magnolia Green, and that the policy was to be effective for the period from March 16, 1999 to March 16, 2000.

7. Schuette completed the house on Lot 15, and then over the next six months entered into separate verbal contracts with Jim Kenny to do four more houses. Each house was a new verbal contract. The evidence is uncontradicted that Jim Kenny did not request a new certificate of insurance at the time each new contract was entered into with Schuette. Had Kenny asked for a certificate of insurance at the time the contract on the house plaintiff was injured at was sublet, Schuette would not have been able to provide one, because his insurance had been canceled. . . .

Neither of these findings of fact are contested and they are binding on appeal. There is competent evidence in the record to support the findings of the Commission that Hagood Homes and Precision Homes entered into separate contracts. Because the contracts were

separate and Hagood did not request nor receive a subsequent certificate of insurance at the time of subcontracting the house where plaintiff was injured, Hagood cannot defend under N.C. Gen. Stat. § 97-19 on the grounds that he (1) received a certificate of insurance for the first house and (2) did not receive notice of the cancellation of the insurance.

Hagood Homes does not have a defense under N.C. Gen. Stat. § 97-19 to the imposition of liability for the injury by accident of plaintiff. I vote to affirm the Commission's order.