***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence modifies the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 EXHIBITS
1. A Form 18 dated 23 April 2001 was marked as Plaintiff's Exhibit 1 and received into evidence.
2. A Form 33 was marked as Plaintiff's Exhibit 2 and received into evidence.
3. An index of medical records was marked as Plaintiff's Exhibit 3 and received into evidence.
4. Plaintiff's answers to interrogatories were marked as Plaintiff's Exhibit 4 and Defendants' Exhibit 1 and received into evidence.
5. A medical record from Allen Orthopedics, PA was marked as Plaintiff's Exhibit 5 and received into evidence.
6. Documents concerning service of process on Dearl Leviner were marked as Plaintiff's Exhibit 6 and received into evidence.
7. Articles of Incorporation for Sam's Drywall, Inc. were marked as Plaintiff's Exhibit 7 and received into evidence.
8. An affidavit signed by Dearl Leviner was marked as Defendants' Exhibit 2 and received into evidence.
 ***********
Based on the foregoing stipulations and the evidence the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of this review, plaintiff was 31 years of age. He was single, having never been married. Plaintiff graduated from high school in 1990 and joined the U.S. Navy in the same year. Plaintiff was trained as an airman and fireman. His residence is in Maxton, North Carolina. Before defendants employed him, plaintiff worked with Buddy Dial doing drywall finishing in commercial and residential establishments. Buddy Dial is the brother-in-law of defendant Dearl Leviner.
2. Plaintiff was hired by Dearl Leviner in North Carolina. Plaintiff and another man, Martin Dean Locklear, went to work for Dearl Leviner in March 2001. Prior to employment, they met with Leviner in North Carolina. Dearl Leviner told plaintiff and Locklear to show up for work in Myrtle Beach, South Carolina on 21 March 2001 and that the rate of pay would be $130 per day. Dearl Leviner paid plaintiff personally with cash in an envelope that was already prepared. Dearl Leviner provided the transportation to and from work.
3. Plaintiff testified that there were approximately six to seven other people working for Dearl Leviner in March 2001. They all came from North Carolina.
4. On 26 March 2001, plaintiff was working as a mud man. His duties included taping joints and finishing the drywall. He usually worked eight to nine hours per day.
5. On 26 March 2001, plaintiff was on a scaffold taping up a skylight when he fell twelve to fourteen feet to the floor, landing on his feet. Plaintiff suffered two broken ankles. Plaintiff's supervisor, Anthony Dwayne Chavis, took plaintiff to the hospital and spoke to the medical staff. Plaintiff never heard anything from Dearl Leviner. The hospital in Myrtle Beach put temporary casts on plaintiff's legs. When he returned to North Carolina, he presented to Dr. David Allen of Allen Orthopedics in Lumberton.
6. Plaintiff presented to Dr. David Allen on 28 March 2001. Dr. Allen found that plaintiff had broken his right ankle in three different places and his left ankle in one place. Plaintiff reported to Dr. Allen that he had fallen off of a scaffold at work on 26 March 2001. Dr. Allen noted that plaintiff's injuries were consistent with plaintiff's account of how the injury occurred.
7. Dr. Allen concluded that plaintiff suffered a right avulsion fracture of his fibula, right non-displaced medial malleolus fracture, right talus fracture of non-displaced abrasion over an area of the right medial malleolus and a left medial malleolus avulsion fracture. He recommended that plaintiff use a wheelchair for approximately two months. If plaintiff had to walk, Dr. Allen recommended that he only walk on his left side because he was susceptible to bone infections and significant wound complications on the right side. Dr. Allen prescribed antibiotics, Percocet for pain, and Ambien for sleep.
8. On 25 April 2001, Dr. Allen noted that plaintiff's left ankle looked good. Plaintiff still exhibited some discomfort when standing on his right ankle. However, Dr. Allen released him to return to work as of 29 May 2001. Dr. Allen assigned a 10% permanent partial disability rating to plaintiff's right ankle and a 5% rating to his left ankle.
9. Plaintiff stayed out of work for a total of 25 weeks. For the first six weeks, plaintiff was in a wheelchair. Thereafter, plaintiff used crutches to move around. During the twenty-five weeks that he was incapacitated, plaintiff did not have any income.
10. Plaintiff is not able to pay for his medical treatment.
11. One of plaintiff's brothers built a wheelchair ramp to plaintiff's house.
12. Plaintiff testified that he has pain everyday in his ankles. However, he was able to return to work as of 29 May 2001.
13. Plaintiff returned to work for Buddy Dial for $10 to $11 per hour doing light-duty finishing work including floor taping. His hourly wage was $3 less per hour than what plaintiff was earning when working for Dearl Leviner. Plaintiff only worked with Buddy Dial for approximately two weeks. Since his accident, he has also found three or four sheetrock jobs.
14. Approximately four weeks after his accident, plaintiff called Sam Eddings about payment for his medical bills. Plaintiff testified that Sam Eddings told him that Dearl Leviner was the person who would take care of the bills. Plaintiff was unable to speak with Dearl Leviner by telephone.
15. Dearl Leviner testified that he has worked for Sam Eddings for the past five years finishing houses and apartments and has never done work in North Carolina. He hired eight to ten men in North Carolina to travel to South Carolina to complete drywall projects he had undertaken with Sam Eddings. On 26 March 2001, Dearl Leviner did not carry any workers' compensation insurance. He testified that it was his understanding that Sam Eddings took care of the insurance issues. When contacted by Dr. Allen's office about the responsibility of the medical bills, Dearl Leviner testified that although he told them to send the bills to him, he never received any medical bills.
16. Dearl Leviner further testified that he has never carried workers' compensation insurance, and had an agreement with Sam Eddings such that he assumed that any of his injured employees would be covered.
17. Sam Eddings is a drywall contractor and resident of North Carolina. Sam Eddings is the owner and president of Sam's Drywall, which is incorporated in North Carolina. He has been in this line of work for 23 years, but has not worked in North Carolina for the past 10 years. Sam's Drywall has an office in Conway, South Carolina. Sam Eddings regularly contracted with Dearl Leviner to provide drywall subcontracting work in South Carolina. There is no written contract between Dearl Leviner and Sam Eddings.
18. Sam Eddings testified that it was not his responsibility to report the injury; the employee should report an injury to the general contractor. Sam Eddings testified that he heard nothing about the injury until three months after it occurred.
19. Plaintiff sustained a compensable injury by accident, which arose out of and in the course of his employment on 26 March 2001 when he fell from a scaffold at work and broke his ankles while working for Dearl Leviner on a job in South Carolina.
20. As a result of his compensable accident, plaintiff was temporarily and totally disabled from 26 March 2001 to 29 May 2001.
21. Plaintiff's average weekly wage was $650.00, which yields a compensation rate of $433.55 per week.
22. As a result of plaintiff's injury, his earning capacity is diminished.
23. The medical treatment plaintiff received for the compensable injury by accident to both ankles was reasonably required to effect a cure, give relief, and/or lessen plaintiff's disability. There is a substantial likelihood that plaintiff will require additional medical treatment in the future.
24. Defendant Sam Eddings did not require his subcontractor, Dearl Leviner, to obtain a certificate issued by a workers' compensation carrier or a certificate of compliance from the Department of Insurance stating that he was in compliance with N.C. Gen. Stat. § 97-93.
25. Defendant Sam Eddings is liable for workers' compensation benefits payable to plaintiff.
26. Defendant Sam Eddings may recover the amount paid to plaintiff from defendant Dearl Leviner.
27. The North Carolina Industrial Commission has jurisdiction over plaintiff's claim, pursuant to N.C. Gen. Stat. § 97-36, even though the injury took place in South Carolina, because plaintiff's contract of employment was made in North Carolina.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident, which arose out of and in the course of his employment on 26 March 2001 when he fell from a scaffold at work in South Carolina and broke his ankles while working for defendant Dearl Leviner. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident, plaintiff was temporarily and totally disabled from 26 March 2001 to 29 May 2001. N.C. Gen. Stat. § 97-29. Plaintiff is entitled to temporary total disability compensation of $433.55 per week for the period from 26 March 2001 to 29 May 2001.
3. As a result of his injury by accident, plaintiff has diminished wage-earning capacity and may elect between benefits under N.C. Gen. Stat. §§ 97-30 or 97-31. If benefits under N.C. Gen. Stat. § 97-30 are elected, plaintiff is entitled to partial disability compensation at a rate of two-thirds the difference between the plaintiff's pre-injury average weekly wage of $650.00 and his post-injury average weekly wage, continuing until such time as the plaintiff's earning capacity meets or exceeds his pre-injury wage, but not to exceed 300 weeks from the date of injury. N.C. Gen. Stat. § 97-30.
4. If benefits under N.C. Gen. Stat. § 97-31 are elected, plaintiff is entitled to permanent partial disability compensation for 14.4 weeks as a result of the ten percent (10%) rating to his right foot and for 7.2 weeks for the five percent (5%) rating to his left foot. N.C. Gen. Stat. § 97-31(14). However, the plaintiff may select the more favorable remedy. Gupton v. Builders Transportation, 320 N.C. 38, 357 S.E.2d 674
(1987). Benefits under N.C. Gen. Stat. § 97-30 would be the more favorable remedy for plaintiff.
5. Plaintiff is entitled to the payment of medical expenses incurred or to be incurred for the treatment of his injury by accident so long as such treatment is reasonably required to effect a cure, give relief, and/or lessen plaintiff's disability.
6. At the time of plaintiff's injury, he was working for defendant Dearl Leviner, performing work pursuant to a contract that defendant Sam Eddings, an intermediate or principal contractor, had sublet to Dearl Leviner. Defendant Sam Eddings did not require his subcontractor, defendant Dearl Leviner to obtain a certificate of insurance issued by a workers' compensation carrier or a certificate of compliance from the Department of Insurance stating that he was in compliance with N.C. Gen. Stat. § 97-93. See N.C. Gen. Stat. § 97-19.
7. Section 97-19 provides:
 Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor, stating that such subcontractor has complied with G.S. § 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service fewer than three employees in the same business within this State, to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.
The plain language of the statute requires the principal or intermediate contractor to be liable for injuries to employees of the subcontractor if the principal or intermediate contractor subletting the work does not secure a certificate of insurance or proof of compliance with the Workers' Compensation Act from the subcontractor to whom the work is sublet. See Robertson, v. Hagood Homes, Inc., ___ N.C. App. ___,584 S.E.2d 871 (2003). Defendant Sam Eddings is therefore liable for workers' compensation benefits payable to plaintiff.
8. Defendant Sam Eddings may recover the amount paid to plaintiff from defendant Dearl Leviner. N.C. Gen. Stat. § 97-19.
9. The Commission has jurisdiction over the instant matter under N.C. Gen. Stat. § 97-36, which provides, in pertinent part:
 Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation (i) if the contract of employment was made in this State, (ii) if the employer's principal place of business is in this State, or (iii) if the employee's principal place of employment is within this State[.]
N.C. Gen. Stat. § 97-36 (2003). Here, plaintiff worked in South Carolina, but plaintiff met with and made employment arrangements with Dearl Leviner in North Carolina. It is clear that plaintiff's actual employment with Dearl Leviner occurred outside the state of North Carolina. Plaintiff's contract for employment, however, was made in North Carolina. To determine where a contract for employment was made, the Commission applies the "last act" test. Thomas v. Overland Express,Inc., 101 N.C. App. 90, 96, 398 S.E.2d 921, 926 (1990), disc. rev.denied, 328 N.C. 576, 403 S.E.2d 522 (1991). The last act test requires that for a contract to be made in North Carolina, the final act necessary to make the contract a binding obligation must be done in North Carolina. Id. In Murray v. Ahlstrom Industrial Holdings, Inc.,131 N.C. App. 294, 506 S.E.2d 724 (1998), the Court of Appeals held that where an out-of-state employer telephoned the plaintiff to offer him a job and the plaintiff accepted on the telephone, the contract was completed by the plaintiff's acceptance and the employer's telling the plaintiff to report to work immediately at the out-of-state location and the last act to make the contract binding occurred in North Carolina. Likewise, here, the evidence shows that plaintiff and Martin Locklear asked Dearl Leviner for a job while in North Carolina. Dearl Leviner told the two men to show up for work on 21 March 2001 and he would pay them $130 per day. Plaintiff agreed to the terms of the employment and Dearl Leviner provided the transportation from North Carolina to South Carolina every day for plaintiff and other employees whom he had hired from North Carolina. Therefore, the last act to make the contract binding was Dearl Leviner's hiring of plaintiff, which occurred in North Carolina. See
N.C. Gen. Stat. § 97-36.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fees hereinafter approved, defendant Sam Eddings shall pay plaintiff temporary total disability benefits in the weekly amount of $433.55 per week for the period of time from 26 March 2001 to 29 May 2001. These amounts have accrued and shall be paid in a lump sum.
2. Defendant Sam Eddings shall pay plaintiff partial disability compensation at a rate of two-thirds the difference between the plaintiff's pre-injury average weekly wage of $650.00 and his post-injury average weekly wage at varying rates until such time as plaintiff's earnings meet or exceed his pre-injury wage, but not to exceed 300 weeks from the date of injury. The exact time periods and exact amount of the reduced wages shall be determined by the parties. If the parties cannot produce sufficient documentation, either party may request a hearing by the filing of a Form 33 Request for Hearing. N.C. Gen. Stat. § 97-30.
3. Defendant Sam Eddings shall pay for all medical expenses incurred or to be incurred by plaintiff when bills are submitted and approved by procedures adopted by the Commission, so long as such evaluations, treatments and examinations are reasonably required to effect a cure, give relief and/or lessen plaintiff's period of disability.
4. A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation approved and awarded for plaintiff is approved and allowed for plaintiff's counsel, payable as follows: twenty-five percent (25%) of the accrued compensation due plaintiff shall be deducted and paid directly to plaintiff's attorney; thereafter, plaintiff's counsel shall receive twenty-five percent (25%) of every weekly check due plaintiff.
5. Defendant Sam Eddings is entitled to recover the amount paid to plaintiff from defendant Dearl Leviner, who shall pay defendant Sam Eddings $200 per month until the balance is paid in full.
6. Defendant Sam Eddings shall pay the costs of this action.
This the ___ day of March 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER