JULIE SHINGLETON, Employee, Plaintiff v. KOBACKER GROUP, Employer;
CONTINENTAL INSURANCE COMPANY, Carrier; Defendants

No. COA01-232

(Filed 19 February 2002)

**Workers' Compensation— change in condition—disability—
evidence insufficient**

The Industrial Commission erred by concluding that a work-
ers' compensation plaintiff had sustained a substantial change in
condition warranting an award of additional compensation where
plaintiff's testimony about her physical restrictions was virtually
identical to that at the original hearing and her assertion that she
is wholly incapable of employment was contrary to the unani-
mous and unchanged medical evidence. A plaintiff asserting a
substantial change in condition and an inability to work must
produce medical evidence that she is no longer capable of any
employment.

Appeal by defendants from an opinion and award entered 4
October 2000 by the North Carolina Industrial Commission. Heard in
the Court of Appeals 8 January 2002.

*Shipman & Associates, L.L.P., by Gary K. Shipman and Carl W.
Thurman III, for plaintiff-appellee.*

*Hedrick, Blackwell & Criner, L.L.P., by G. Grady Richardson,
Jr. and P. Scott Hedrick, for defendant-appellant Kobacker
Group.*

HUNTER, Judge.

Kobacker Group and Continental Insurance Company (collec-
tively, "defendants") appeal an opinion and award of the Industrial
Commission concluding Julie Shingleton ("plaintiff") has sustained
a substantial change in condition entitling her to further disability
compensation. For the reasons stated herein, we reverse the
Commission's opinion and award.

The facts pertinent to this appeal are as follows. On 15 June 1989,
plaintiff sustained an injury to her lower back while working for
defendant, Kobacker Group, as the manager of a shoe store in
Wilmington, North Carolina. Plaintiff was diagnosed as having suf-
fered a back strain, and she was released to work at light duty.

Plaintiff finished working for defendant in August 1989 when she moved to West Virginia. In September 1989, plaintiff was examined by osteopathic physician George Tokodi, Jr., who diagnosed her with a lumbar strain, and recommended she receive physical therapy.

Plaintiff moved to Ohio in late 1989. In early 1990, plaintiff began experiencing problems sleeping, and she complained of numbness in her leg. Plaintiff contacted defendants to ask for a referral, and defendants referred her to Dr. James Dauphin, an orthopedic surgeon. Dr. Dauphin examined plaintiff in May 1990. He determined she had a "possible herniated disc at L-5 with lumbar sprain." Plaintiff was pregnant at this time, and Dr. Dauphin recommended she begin an exercise program. Plaintiff visited Dr. Dauphin in October and November 1990 following the birth of her child, complaining that her pregnancy worsened her back pain. Dr. Dauphin determined plaintiff had a "chronic SI joint sprain with a superimposed lumbar disc bulge which is probably subclinical and of no relevance." Dr. Dauphin released plaintiff to return to work as of 8 November 1990.

In February 1991, plaintiff obtained employment as a shoe store clerk. According to the finding of the Commission, plaintiff only worked for six weeks. Plaintiff returned to Dr. Dauphin in January 1992, complaining of pain radiating from her hip to her foot. Dr. Dauphin was of the opinion that plaintiff could return to work at that time. Dr. Dauphin was never of the opinion that plaintiff could not work throughout the four years she was under his care.

Plaintiff's claim for disability compensation was originally heard in 1993. At that hearing, plaintiff complained that her back pain caused her to have trouble standing, lifting, and bending. She stated that in her opinion, she was unable to perform the normal duties she had performed during her employment in defendant's shoe store. The Full Commission entered an opinion and award on 18 July 1994 concluding that plaintiff had sustained a compensable injury, and awarding her temporary total disability payments, three hundred weeks of temporary partial disability payments, and all medical expenses, including future expenses, resulting from her 15 June 1989 injury.

Plaintiff visited Dr. Dauphin for the final time in September 1994, complaining of hip pain, headaches, and depression. Dr. Dauphin was of the opinion that plaintiff would not be able to return to her previous job which included bending and lifting, but he recommended she undergo job retraining so she could obtain employment in a different type of job. He also recommended that plaintiff attend a pain clinic.

Plaintiff also began visiting osteopathic physician Ernest Miller in 1994. Dr. Miller continued to treat plaintiff until at least January 1999, during which time he diagnosed her with depression, meralgia paresthetica, cervical, thoracic, and lumbar myositis, sinusitis, lumbar, sacral and thoracic somatic dysfunction, lumbar strain, arthritis, possible lumbar disc disease, bronchitis, cerviothoracic strain, cervical strain, cervical, dorsal, and sacroiliac somatic dysfunction, somatic dysfunction of the cervical and lumbosacral spine, fibromyalgia, middle ear infection, right hip strain with piriformis syndrome, thoracic outlet syndrome, hypoglycemia, tachycardia, carpal tunnel syndrome, and bursitis of the hips. In 1998, plaintiff also began seeing Dr. Michael Shramowiat, a specialist in physical medicine rehabilitation and pain medicine.

On 29 March 1996, defendants filed a Form 28B to establish that all compensation awarded to plaintiff in the opinion and award filed 18 July 1994 had been paid. On 22 August 1996, plaintiff filed a request for a rehearing, contending that she was entitled to further compensation because her condition had worsened. A hearing was held before a deputy commissioner on 11 December 1998. The deputy commissioner concluded the evidence failed to show that plaintiff had sustained a substantial change in condition which would entitle her to additional compensation, and that plaintiff had failed to show a causal link between her original 1989 back injury and her myriad of additional health problems, including carpal tunnel syndrome, thoracic outlet syndrome, fibromyalgia, and cervical complaints.

On 4 October 2000, the Full Commission filed an opinion and award reversing the deputy commissioner and concluding that plaintiff had sustained a substantial change in condition under the law, and is therefore entitled to additional compensation from defendant. One commissioner dissented, concluding plaintiff's physical complaints and ability to earn wages had not changed since the original hearing, and that, in any event, any change in condition was not related to plaintiff's 1989 back injury. The Commission awarded plaintiff temporary total disability compensation from 29 September 1994 until further order of the Commission, as well as all medical expenses incurred or to be incurred as a result of her injury, including her chronic pain syndrome and depression. Defendants appeal.

Defendants bring forth five arguments on appeal, contending: (1) the Commission erred in concluding plaintiff sustained a substantial change in condition under the Worker's Compensation Act; (2) the

Commission's findings of fact that plaintiff's 1989 injury caused her subsequent medical conditions are unsupported by competent evidence; (3) plaintiff has attained maximum medical improvement; (4) plaintiff is not entitled to additional temporary total disability benefits; and (5) the Commission's findings of fact are unsupported by competent evidence.

Although on appeal the Commission's findings of fact are conclusive where supported by competent evidence, *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999), "findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them," *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). " 'Whether the facts amount to a change of condition pursuant to N.C. Gen. Stat. § 97-47 is a "question of law," ' and thus, is subject to de novo review." *Cummings v. Burroughs Wellcome Co.*, 130 N.C. App. 88, 90, 502 S.E.2d 26, 28 (citations omitted), *disc. review denied*, 349 N.C. 355, 517 S.E.2d 890 (1998).

Section 97-47 of the North Carolina General Statutes provides that upon the application of an interested party "on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded." N.C. Gen. Stat. § 97-47 (1999). A change of condition for purposes of N.C. Gen. Stat. § 97-47, is "a *substantial* change in physical *capacity to earn wages*, occurring after a final award of compensation, that is different from that existing when the award was made." *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 654, 508 S.E.2d 831, 835 (1998) (emphasis added). A change in condition may consist of either: "a change in the claimant's physical condition that impacts his earning capacity"; "a change in the claimant's earning capacity even though claimant's physical condition remains unchanged"; "or a change in the degree of disability even though claimant's physical condition remains unchanged." *Blair v. American Television & Communications Corp.*, 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996).

"The party seeking to modify an award based on a change of condition bears the burden of proving that a new condition exists and that it is causally related to the injury upon which the award is based." *Cummings*, 130 N.C. App. at 91, 502 S.E.2d at 29. A plaintiff must prove the element of causation "by the greater weight of the evi-

dence." *Bailey*, 131 N.C. App. at 654, 508 S.E.2d at 835. A decrease in earning capacity may be shown by the production of: (1) medical evidence that the claimant is "physically or mentally, as a consequence of the work related injury, incapable of work in any employment"; (2) evidence that the claimant "is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment"; (3) evidence that the claimant "is capable of some work but that it would be futile because of preexisting conditions i.e., age, inexperience, lack of education, to seek other employment"; or (4) evidence that the claimant "has obtained other employment at a wage less than that earned prior to the injury." *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

In the present case, plaintiff sought to prove a substantial change in condition based upon her inability to work in any employment. Plaintiff satisfies this burden "by producing medical evidence showing '[s]he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment.' " *Grantham v. R. G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997) (citation omitted), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998). Plaintiff failed to present any medical evidence which could support a finding that she is physically or mentally incapable of work in any employment.

The medical evidence consists of the depositions of doctors Tokodi, Dauphin, Miller, and Shramowiat. The medical evidence presented from depositions taken in 1992 in preparation for the original hearing and from those taken for the current matter in February 1999 is identical: all of plaintiff's doctors were of the opinion in 1992 and in 1999 that although plaintiff should not perform the duties involved in her former employment with defendants, which involved much bending and lifting, plaintiff is capable of gainful employment in light duty work. There is no medical evidence that plaintiff has ever been incapable of gainful employment.

Dr. Tokodi was the first osteopathic doctor to examine plaintiff shortly after her 1989 injury. His examination revealed that plaintiff had some "back spasm" and that she had lost some of the normal curvature to her back, but that "otherwise, the exam was essentially negative." Dr. Tokodi diagnosed plaintiff with a lumbar strain and recommended she seek physical therapy. He testified in 1992 that based upon his examination of plaintiff's injury, he would object to

her performing the bending and lifting duties required in a shoe store clerk position, but that he "would have no objection to her performing a clerical or cash register running-type job."

Dr. Dauphin, who examined plaintiff from 1990 until 1994, testified that in 1994, he was of the opinion that although plaintiff should not return to her prior job as a shoe store clerk due to the bending and lifting involved, she was capable of undergoing job retraining to obtain other employment that would not require such movements. Dr. Dauphin testified in 1999 that his thoughts about her condition and course of treatment did not change throughout the time he treated her, and that his recommendation to plaintiff was the same early on as it was in 1994: that "she go to work in a different sort of job." Although Dr. Dauphin made clear that in his opinion, plaintiff would have difficulty performing a job involving a lot of bending or twisting with weights up to fifty pounds, he was never of the opinion that plaintiff was wholly incapable of work altogether. He testified that he "did not want her to return to her own job [as a shoe store clerk], but [he] certainly had no objection to her returning to a light duty work."

Moreover, Dr. Dauphin's testimony as to plaintiff's capability to earn wages did not change from the 1993 hearing to his testimony in the current matter. Dr. Dauphin testified repeatedly during his 1992 deposition, as in his 1999 deposition, that plaintiff was totally capable of working in a job that did not require a lot of bending and lifting. Dr. Dauphin stated that plaintiff "should do very well in light work," and that she should "simply find employment that does not involve constant bending, stooping or lifting."

Dr. Miller, who examined plaintiff from 1994 through 1999, and throughout the time that plaintiff was claiming a change in condition, was of the same opinion as doctors Tokodi and Dauphin. Dr. Miller opined in February 1999 that plaintiff could *presently* perform a sedentary type of job, and that, despite the numerous ailments with which he had diagnosed plaintiff over the years, he would not even object to her "performing the duties of a clerk in a shoe store" unless "she was having to do some heavy lifting of boxes."

Similarly, Dr. Shramowiat, who began examining plaintiff in 1998, testified that as of the time of his deposition in February 1999, he was of the opinion that plaintiff had been inactive for a decade, that she needed to get out and engage in some activity, and that she "is physi-

cally capable of gainful employment." He testified that as of "[r]ight now, [plaintiff] would be at light duty" but that with some physical therapy to regain strength lost due to extreme inactivity, he hopes she can return to a job "where she can perform some lifting." Dr. Shramowiat testified that as of the time of his February 1999 deposition, plaintiff was capable of employment "[i]f she was in a light duty job with lifting of ten to twenty pounds; something that involved, you know, no spectacular lifting activities or a lot of trunk rotation." When further questioned as to whether plaintiff could *presently* be gainfully employed, Dr. Shramowiat reiterated that she is indeed fully capable of gainful employment "as long as it's not a job that's very physically demanding." Dr. Shramowiat went further, testifying that if plaintiff could get out and become more active, "she should be able to progress well beyond a light duty job."

In summary, according to *all* of the medical evidence which plaintiff presented, she has not sustained a change in her ability to earn wages since the original hearing on this matter. Indeed, the unanimous medical testimony from all of plaintiff's doctors is identical to the medical evidence presented for the 1993 hearing. Quite clearly, plaintiff has failed to carry her burden of producing "medical evidence showing '[s]he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment.' " *See Grantham*, 127 N.C. App. at 534, 491 S.E.2d at 681 (citation omitted).

The only evidence in the record which could possibly support the Commission's conclusion that plaintiff is totally disabled is plaintiff's own testimony that she can no longer work in any capacity. However, we re-emphasize that in proving an inability to work in any employment due to a physical or mental condition in the context of asserting a substantial change in condition, a plaintiff must produce medical evidence that she is no longer capable of any employment. *See id.; see also Chisholm v. Diamond Condominium Constr. Co.*, 83 N.C. App. 14, 19, 348 S.E.2d 596, 600 (1986) (Commission properly denied plaintiff's claim to further compensation based on theory of substantial change in condition where plaintiff's evidence consisted entirely of plaintiff's own testimony and there was no medical evidence concerning the cause and extent of his injuries), *disc. review denied*, 319 N.C. 103, 353 S.E.2d 106 (1987).

We further observe that the nature of plaintiff's testimony regarding her physical ailments barely changed from the 1993 hearing to the

hearing at issue here. Although plaintiff testified at the subsequent hearing that her pain was "more widespread," plaintiff's complaints regarding her physical restrictions were the same at both hearings: that she has trouble sitting and standing for long periods of time, that she has trouble bending and lifting, and that she has trouble sleeping. "A change of condition ' "refers to conditions different from those" ' in existence when an award was originally made and ' "a continued incapacity of the same kind and character and for the same injury is not a change in condition." ' " *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 149, 468 S.E.2d 269, 274 (1996) (citations omitted).

In conclusion, we disagree with the Commission that plaintiff's own assertion that she is wholly incapable of employment is competent evidence to carry her burden of showing a substantial change in condition where her opinion is contrary to the unanimous and unchanged medical evidence, and where plaintiff's testimony about her physical restrictions is virtually identical to that of the 1993 hearing. We therefore reverse the Commission's conclusion that plaintiff has sustained a substantial change in condition warranting an award of additional compensation.

In light of this holding, we need not address defendants' additional arguments, including that plaintiff failed to prove by the greater weight of the evidence that her 1989 back injury caused her subsequent medical problems for which she now seeks additional compensation. Even if plaintiff established that her 1989 injury caused her subsequent medical problems, plaintiff did not prove that the subsequent problems resulted in a substantial change in her capacity to earn wages.

Reversed.

Judges GREENE and TYSON concur.