***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for certain modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The employee-employer relationship existed at the time of the alleged incident.
2. The employer, Duke University, was self-insured at the time of the alleged incident.
3. Plaintiff suffered a compensable injury on October 26, 2000.
4. At the time of the injury plaintiff had an average weekly wage of $415.38 and his compensation rate is $276.93.
5. Plaintiff received temporary total disability benefits at his compensation rate of $276.93 from October 26, 2001 through November 28, 2001, and temporary partial benefits at various rates for the period from November 29, 2001 through January 2, 2002.
6. Plaintiff returned to work for defendant on January 3, 2002.
7. Plaintiff was assigned a permanent partial impairment rating of three percent to his back and was compensated for this permanent partial impairment pursuant to a Form 21 Agreement that was approved by the Industrial Commission on June 27, 2002.
8. Plaintiff allegedly sustained a second injury by accident on or about May 1, 2003. This claim is the subject of I.C. File No. 433455. Plaintiff has not filed a Form 18 for this claim.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a forty-one year old male with a high school education.
2. Plaintiff was employed by defendant for eighteen years, last working as a housekeeper from 1999 to February 10, 2004.
3. On October 26, 2000, plaintiff injured his back while working during the normal course of his employment as a housekeeper. Defendant admitted compensability of plaintiff's claim pursuant to a Form 60.
4. On August 1, 2001, plaintiff presented to Dr. Carol Epling at Duke Employee Occupational Health Wellness. He was diagnosed with mechanical myofascial lower back pain.
5. Plaintiff was given temporary work restrictions to include no lifting over twenty-five pounds and no bending at the waist. He was referred to Southwind Rehabilitation Center to attend a work reconditioning program from October 26, 2001 to November 28, 2001. The Southwind Rehabilitation program provided significant improvement in plaintiff's symptoms.
6. On November 26, 2001, plaintiff underwent a functional capacity evaluation at Southwind Rehabilitation that demonstrated he was capable of heavy and very heavy work. According to this FCE, plaintiff was able to lift one hundred pounds from floor to knuckle height, and fifty pounds from waist to overhead.
7. As a result of his marked improvement and based upon the FCE results, plaintiff was released to return to work on November 28, 2001, initially working four hours a day. Dr. Epling assigned weight restrictions of no lifting greater than fifty pounds unassisted to the waist, and no lifting greater than twenty pounds unassisted above his waist. These restrictions were more conservative than indicated by the FCE, but were imposed in recognition of plaintiff's ongoing complaints of pain and intended to reduce pain by limiting physical activities at work.
8. On January 2, 2002, plaintiff returned to his job as housekeeper with defendant. Plaintiff initially worked limited hours progressing to full-time work.
9. Although plaintiff was never written out of work as a result of his back injury, he was allowed not to work during the comprehensive treatment at Southwind Rehabilitation. Plaintiff was paid weekly temporary total disability compensation benefits during this time and also received partial temporary disability compensation from November 29, 2001 to January 2, 2002 while he was progressing to full time work.
10. Due to continued complaints of pain, plaintiff was treated at Duke's Pain Clinic by Dr. Shashidar Kori, a pain management physician, who could not find an etiology for plaintiff's complaints, but prescribed a regime of medication. By April 24, 2002 plaintiff had improved.
11. On May 1, 2002, plaintiff again saw Dr. Anna Bettendorf, an orthopedist at Duke Employee Occupational Health Wellness. Plaintiff reported that he was back at work and doing "pretty well." Dr. Bettendorf certified plaintiff had reached maximum medical improvement and assigned no permanent partial impairment rating. In addition, Dr. Bettendorf indicated that there was no need for additional medical evaluation or treatment.
12. On May 22, 2002, Dr. Epling certified that plaintiff had reached maximum medical improvement and assigned a three percent permanent partial disability rating. Plaintiff retained permanent work restrictions that included (a) no lifting over fifty pounds to the waist; (b) no lifting of twenty pounds above the waist; and (c) avoid bending at the waist.
13. On June 17, 2002, the parties executed a Form 21 providing for payment of a three percent permanent partial disability to plaintiff's back.
14. Defendant accommodated plaintiff's physical restrictions by allowing him work a lighter housekeeping job. Plaintiff testified that he began working the "lady's position" after his injury. This job did not require mopping and plaintiff testified that he did not have to lift a lot in this position.
15. On November 2, 2002, plaintiff again presented to Duke Employee Occupational Health Wellness complaining of ongoing low back pain. Pain medications were prescribed. Dr. Epling noted that plaintiff's pain improved by a follow-up visit on February 4, 2003. Plaintiff was released from Dr. Epling's care with no change in permanent restrictions.
16. On July 29, 2003, plaintiff returned to Duke Employee Occupational Health Wellness complaining of worsening low back pain and pain in his right hip. Plaintiff reported that his work as a housekeeper had become more physically demanding between May and July of 2003 and he was experiencing increased pain because he had been required to move furniture during that time period.
17. Dr. Epling noted plaintiff complained of a new problem, right hip pain. Dr. Epling advised plaintiff to complete a new accident report as plaintiff believed it was a new problem. Dr. Epling is candid, however, that she gave this advice as a matter of precaution. Duke Employee Occupational Health Wellness forms after July 29, 2003 list an injury date of "June 2003," because plaintiff reported an occupational injury that listed "May — June — July" as an injury date.
18. Dr. Epling's renewed treatment also noted plaintiff had an increase in low back pain. A repeat MRI in 2003 was a benign study demonstrating nothing different from the 2001 CT scans. Dr. Epling acknowledged that increased lower back pain could influence pain in the hip. Plaintiff's work activities were limited. He was to avoid tasks involving pushing, pulling or lifting anything over twenty-five pounds.
19. Dr. Epling referred plaintiff for injections, and Dr. Diane Scott administered both an epidural steroid injection and subsequently a facet injection. Plaintiff perceived little to no benefit from these injections. Chiropractic treatment was attempted. Plaintiff reported chiropractic treatment worsened his condition. Plaintiff was referred to Les Phillips, a psychologist, for assistance in coping with and managing pain. Plaintiff failed to return to Dr. Phillips because he did not feel depressed and did not need that sort of treatment.
20. In January 2004, Dr. Epling ordered an MRI due to plaintiff's continuing lower back pain. The MRI revealed disc degeneration of plaintiff's L5-S1 and some degree of facet joint degeneration of L4-5 and L5-S1.
21. Plaintiff removed himself from work on February 10, 2004.
22. On February 18, 2004, Dr. Scott performed a series of steroid injections. Plaintiff's results were minimal.
23. Dr. Epling removed plaintiff from work beginning February 26, 2004. It appears she returned plaintiff to work as of March 1, 2004. His work restrictions included no lifting, pushing or pulling anything greater than twenty-five pounds and no bending at the waist. At the same time plaintiff was released to return to work, Dr. Epling prescribed Neurontin, Vioxx and Oxycodone to help manage pain.
24. Nonetheless, plaintiff did not return to employment with defendant after being released, contending that housekeeping duties required him to do more than allowed by his permanent work restrictions and due to increased pain associated with work related activities. However, plaintiff has not performed a reasonable job search for other employment within his restrictions.
25. On May 20, 2004, Dr. Epling again certified plaintiff at maximum medical improvement. No additional permanent partial impairment rating was assigned to plaintiff's back. Dr. Epling retained the same permanent physical restrictions previously imposed.
26. On August 6, 2004, upon referral of his counsel of record, plaintiff presented to Dr. T. Craig Derian, an expert in orthopedic surgery. Dr. Derian performed an independent medical examination.
27. In Dr. Derian's opinion, plaintiff had symptomatic disc degeneration at L5-S1 with associated facet joint degeneration. Dr. Derian opined that plaintiff's lower back condition had worsened between his initial diagnosis at Duke Employee Occupational Health Wellness in August 2001 and August 2004. The opinion is based upon plaintiff's need for more intensive medical treatment and reports of increasing symptoms.
28. On August 6, 2004, Dr. Derian assigned a "likely" ten percent disability rating of plaintiff's back, but indicated that a final rating should be given following additional physical therapy. Dr. Derian recommended further treatment consisting of back reconditioning and rehabilitation at Southwind Rehabilitation as plaintiff had benefited from the program previously.
29. Dr. Derian opines, after reviewing a job description of a housekeeper with defendant, that plaintiff was disabled from performing those duties due to the risk of aggravating his back injury and the danger of actual anatomical changes to his back. Dr. Derian clarified his opinion that plaintiff was capable of lighter jobs more restricted in terms of bending, lifting and twisting.
30. Presented with Dr. Derian's opinions, Dr. Epling referred plaintiff to Dr. Scott Sanitate, an expert in physical medicine rehabilitation. In Dr. Sanitate's expert opinion, plaintiff could return to work, but only under work restrictions of no lifting anything over forty pounds and avoiding repetitive functions, extension of his lumbar spine and bending at the waist. Dr. Sanitate noted an inconsistent examination with nonorganic findings, meaning there was no good neurologic or physiologic explanation for some of the findings. As a result of the inconsistent examination and nonorganic findings, Dr. Sanitate was reluctant to proceed with further treatment for plaintiff, and did not believe that further treatment would be beneficial.
31. The greater weight of the evidence establishes that plaintiff experienced a substantial change in physical condition materially affecting his ability to earn wages since the execution of the Form 21 on June 27, 2002. This finding is predicated upon the fact that plaintiff's increased work activities during May through June 2003 materially increased plaintiff's symptoms, requiring more aggressive treatments that failed to provide substantial relief. Further, plaintiff's supervisor completed a long-term disability application indicating plaintiff's job duties required him to lift and carry twenty-six to fifty pounds anywhere from twenty-six to thirty times per day. The claim form also indicates that plaintiff's job requires a significant amount of stooping, kneeling and reaching below the shoulders. These work demands are clearly in excess of the permanent work restrictions assigned by Dr. Epling and Dr. Sanitate.
32. Dr. Derian's opinion is accorded greater probative force than Dr. Epling's opinions. First, Dr. Epling's testimony establishes that she believes plaintiff simply has to learn to work with pain. The evidence clearly establishes that plaintiff earlier had obtained benefit from rehabilitation at Southwind Rehabilitation, a treatment program that Dr. Derian recommends.
33. Dr. Derian's opinions are accorded greater probative force than Dr. Sanitate's. First, Dr. Sanitate did not have plaintiff's complete medical records upon examination. Dr. Sanitate admitted the records would have been helpful but "probably" would not have changed his opinions. In contrast, Dr. Derian had more complete records and copies of tests plaintiff underwent. Second, Dr. Sanitate's initial opinion as to plaintiff's ability to continue as a housekeeper were initially formed without benefit of a job description. During testimony, Dr. Sanitate was presented with a job description and admitted that the full range of tasks as defined were beyond plaintiff's physical capabilities.
34. Dr. Derian's opinion as to the need for further medical treatment is also more compelling than Dr. Sanitate's opinion. The record clearly demonstrates that plaintiff participated in the rehabilitation program at Southwind Rehabilitation and reported substantial improvement, subsequently returning to modified housekeeper duties. Second, Dr. Sanitate's opinion is based, in part, on the fact that plaintiff clearly expressed an unwillingness to return with defendant in any capacity.
35. Dr. Derian's testimony supports plaintiff's justification in removing himself from work as a housekeeper at Defendant on February 10, 2004.
36. Some evidence was presented that defendant offered plaintiff a position as a postal carrier as an alternative to his job as a housekeeper. Plaintiff determined that the postal carrier position would be more physically demanding on his lower back than the housekeeping position and did not attempt the alternative employment. There is insufficient evidence of record to support plaintiff's decision and the record is undisputed that he did not even attempt the position. No expert medical testimony was offered on plaintiff's ability to perform the postal carrier position.
37. The record evidence does establish that by the general time period in which defendant offered the postal carrier position, the relationship between plaintiff, defendant and the Duke medical care providers had substantially deteriorated. For example, plaintiff is noted to have stated he was "sick" of defendant and that he would not return to work with defendant.
38. The record establishes that plaintiff has not looked for other employment, having applied for long-term disability at defendant and Social Security disability benefits.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. Defendant has admitted that plaintiff sustained a compensable injury by accident arising out of and in the course of his employment to his back as a direct result of a specific traumatic incident on October 26, 2000. N.C. Gen. Stat. § 97-2(6).
2. The Form 21 in this case, paying plaintiff benefits for 3% permanent partial disability of his back, was a final award of the Industrial Commission. Pruitt v. Knight Publishing Co., 289 N.C. 254, 221 S.E.2d 355
(1976) (upon approval by the Industrial Commission, Forms 21 and 26 have the full force and effect of a final award by the Commission).
3. A change of condition is defined as a substantial change in the claimant's physical capacity to earn wages, occurring after a final award of compensation, different from that existing when the award was made. In order to recover for a change of condition, plaintiff is required to prove by the greater weight of the evidence that the change in condition is a natural consequence of the original injury. N.C. Gen. Stat. § 97-47;Bailey v. Sears Roebuck Co., 131 N.C. App. 649, 508 S.E.2d 831
(1998). A change in condition may consist of either: a change in the claimant's physical condition that impacts his earning capacity; a change in the claimant's earning capacity even though claimant's physical condition remains unchanged; or a change in the degree of disability even though claimant's physical condition remains unchanged. Shingleton v.Kobacker Group, 148 N.C. App. 667, 559 S.E.2d 277 (2002). The greater weight of the medical evidence compels a finding that plaintiff sustained a substantial change of condition during the period of May through June 2003 significantly aggravating his back condition. N.C. Gen. Stat. § 97-47.
4. The evidence establishes that plaintiff was temporarily totally disabled from February 10, 2004, when plaintiff removed himself from work through March 1, 2004 when Dr. Epling released plaintiff to return to work with the same restrictions given earlier as he had reached maximum medical improvement without sustaining an increase in his permanent partial disability rating to his back. However, plaintiff did not return to work at this time. N.C. Gen. Stat. § 97-29.
5. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Plaintiff has failed to establish by the greater weight of the evidence that as a result of the compensable injury by accident he is incapable of work in any employment due to physical or mental disability, age, inexperience, lack of education after May 20, 2004. N.C. Gen. Stat. §§ 97-2(9); 97-29;Russell V. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
6. In seeking a request for further medical treatment, there is no requirement that plaintiff prove a "change of condition" so long as the request for additional medical treatment is made within the two year period of limitation. N.C. Gen. Stat. §§ 97-25 97-25.1. The medical treatment sought must, however, be directly related to the original compensable injury. Pittman v. Thomas Howard, 122 N.C. App. 124,468 S.E.2d 283, disc. review denied, 343 N.C. 513, 472 S.E.2d 18 (1996). If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury.Reinninger v. Prestige Fabricators, Inc., 136 N.C. App. 255,523 S.E.2d 720 (1999). Defendant has offered no evidence and does not contend that that the medical treatment rendered by Dr. Epling and Defendant's health care providers following June 27, 2003, including the examinations performed by Drs. Sanitate and Derian, are not reasonably related to plaintiff's initial injury by accident. Defendant is required to pay for all medial treatment and examinations rendered by these physicians. N.C. Gen. Stat. § 97-25.
7. The greater weight of the medical evidence establishes that additional medical treatment would provide relief, effect a cure or lessen plaintiff's period of disability and should be ordered. N.C. Gen. Stat. § 97-25.
8. The Industrial Commission, in its discretion, may designate authorized treating physicians. Given the relationship currently existing between plaintiff and his Duke health care providers, Dr. Derian should be designated as plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney fee provided below, defendant shall pay temporary total disability compensation at the rate of $276.93 for the period from February 10, 2004 until March 1, 2004. This amount has accrued and shall be paid in a lump sum.
2. Defendant shall pay for all medical treatment reasonably related to plaintiff's lower back injury in accordance with law, including the treatment that plaintiff has received since June 27, 2002.
3. Dr. Derian is designated as plaintiff's authorized treating physician until further order of the Commission or mutual agreement by the parties.
4. Defendant shall pay for all such care and treatment when the bills for such services have been filed in accordance with Industrial Commission administrative regulations.
5. Defendant shall bear the costs.
This the 14th day of October 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER